## TYSON et al. v. UNION INS. SOC. OF CANTON, Limited.

(District Court, N. D. California. August 6, 1924.)

Insurance ⬤⟾413—Damage to cargo from rain driven by wind is caused by wind, a peril of the sea.

Damage to cargo is due to wind, a peril of the sea, and so covered by policy, where cargo was injured by rain, which would not have reached the cargo, had it not been driven by the wind, making the wind the proximate cause.

In Admiralty. Libel by James Tyson and others against the Union Insurance Society of Canton, Limited. On exceptions to libel. Exceptions overruled.

Andros & Hengstler and F. W. Dorr, all of San Francisco, Cal., for libelants.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for respondent.

PARTRIDGE, District Judge. The libel charges that a quantity of rice in bags was shipped from San Francisco to Santiago. It was transshipped from the ship to certain barges in the harbor, and while it was being so transshipped a storm came up, driving the waves and rain against the rice, so that a large quantity of it was damaged. The libel then charges the issuance of a policy of insurance by the respondent.

It appears that the respondent, by chemical analysis, determined what part of the rice had been injured by sea water, and for that part it either paid or stands willing to pay. Respondent, however, refused to pay for the rice injured by the rain, on the ground that damage by fresh water does not constitute a peril of the sea. The question is thus squarely presented by the exceptions to the libel as to whether or not that damage was due to a peril of the sea. The question is absolutely new, so far as the industry of counsel goes, and I myself have examined it, and find no case parallel to it, and therefore it must be resolved in accordance with general principles and the nearest authority bearing upon the matter.

It is conceded, of course, by everybody, that damage by the wind or waves is among the perils of the sea. The question here is whether or not rain driven by the wind is within the meaning of the phrase, because it is conceded that the rain would not have reached the rice if it had not been for the wind. It is certain that, if the wind drove the ship off her course and on a reef or bar, it would be within the phrase; so, equally, it would be within that phrase if the wind drove some foreign body against the ship and wrecked or damaged her.

In the opinion of Lord Herschell in The Xantho (1887) 12 App. Cas. 510, it is said: "A policy of insurance is an absolute contract to indemnify for loss by perils of the sea, and it is only necessary to see whether the loss comes within the terms of the contract, and is caused by perils of the sea, the fact that the loss is partly caused by things not distinctly perils of the sea does not prevent its coming within the contract.

In the case of a bill of lading it is different, because there the contract is to carry with reasonable care, unless prevented by the excepted perils."

The philosophy of the matter is discussed in Dudgeon v. Pembroke, 9 Q. B. 595, as follows:

"But in all cases the law regards the proximate cause of the loss; and it would be difficult to find a better example of what Lord Bacon calls the infinity of the 'causes of causes, and their impulsion one on the other,' than is afforded in this case. The ship perished because she went ashore on the coast of Yorkshire. The cause of her going ashore was partly that it was thick weather and she was making for Hull in distress, and partly that she was unmanageable because full of water. The cause of that cause, viz., her being in distress and full of water, was that when she laboured in the rolling sea she made water; and the cause of her making water was that when she left London she was not in so strong and staunch a state as she ought to have been; and this last is said to be the proximate cause of the loss, though since she left London she had crossed the North Sea twice. We think it would have been a misdirection to tell the jury that this was not a loss by perils of the seas, even if so connected with the state of unseaworthiness as that it would prevent any one who knowingly sent her out in that state from recovering indemnity for this loss."

In this circuit, in The Santa Rita, 176 F. 895, 100 C. C. A. 360, 30 L. R. A. (N. S.) 1210, the case was that the Santa Rita had allowed quantities of oil to escape and cover a portion of the surface of San Francisco Bay in the neighborhood of the dock in Oakland. This oil took fire; certain goods on a wharf were partly destroyed. The point made was that the real cause of the loss was not the escape of the oil, but the fact that some one had negligently thrown a cigar stub or something of that kind, and thereby set the oil on fire. The Circuit Court of Appeals, however, pointed out that the most reliable test to apply in determining whether an act is the proximate or remote cause of the damage is to determine whether a responsible human agency has intervened. If a new agency or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote.

It has been pointed out frequently that the causa causans of the schoolmen is not necessarily, nor perhaps usually, the causa proxima of the law. It might readily be said that the last cause in the instant case was the rain, and yet the proximate cause within the meaning of the law was the wind, without whose agency the rain could not have reached the rice.

Exceptions to the libel will therefore be overruled, with the usual time to answer.